UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BAMBOO 400 South 18th Street, LLC )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CENTIMARK CORPORATION )<br>)<br>Defendant. ) | Case No. 4:23-cv-00458-SEP |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss, Doc. [10].  For the reasons set forth below, the motion is granted in part and denied in part.

### FACTS AND BACKGROUND[1]

Plaintiff BAMBOO 400 South 18th Street, LLC ("Bamboo") is the owner of the property located at 400 South 18th Street, St. Louis, Missouri ("Property").  Doc. [30] ¶ 1.  On or about March 2021, the prior owner of the Property entered into a contract with Defendant "for demolition, replacement and construction work for the Centimark Roof ('Contract'), which included a transferable 20-year warranty for the Centimark Roof ('Warranty')." *Id*. ¶ 9.  Plaintiff became "the successor in interest to the Warranty, the Contract and all of the rights and claims associated therewith by nature of Plaintiff's Purchase Agreement and General Assignment dated February 19, 2022, whereby Plaintiff purchased and acquired the Property, Warranty and other rights related to the Contract." *Id*. ¶ 11.  There are "numerous problems relating to the Centimark Roof system throughout the building," which Plaintiff attributes to "among other things, improper planning, design and engineering, improper preparation, remediation, application and sizing of various other components, failure to properly install the Centimark Roof, and other installation deficiencies." *Id*. ¶ 14.  There are also "various distresses in numerous components of the Centimark Roof due to a variety of construction, workmanship and material defects and failures." *Id*. ¶ 15.  According to Plaintiff, these distress issues include, but are not limited to:

---

[1] The Court assumes the following facts, taken from the Amended Complaint, to be true for the purposes of the motion to dismiss.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

  a. The membrane of the Centimark Roof was improperly and unsafely held in place with inadequate [sic] and never properly adhered, anchored or insulated;

  b. There is [sic] pervasive and severe humps, curls and bowing of the insulation and insulation board;

  c. There is severe cupping and depressions in the surface of the Centimark Roof throughout the entire roof surface;

  d. Extensive, premature failures, collapses [sic] materials, detached roof components and other premature wear in a roof which was less than two (2) years into its 20-year warranty and service life;

  e. Nearly all of the roof core samples contained heavy moisture in the insulation below the TPO membrane;

  f. Core samples also exhibited moisture within the concrete construction of the roof;

  g. The roof drains have failed and are not functioning throughout the Centimark Roof, in part due to the above defects and failures; and

  h. There was widespread, extensive corrosion, water staining, advanced corrosion and concrete deposits due to extensive leaking and decalcification of the roof components.

*Id.* ¶ 16.

  Plaintiff brings six claims against Defendant: Breach of Contract, Negligent Misrepresentation, Negligence, Breach of Implied Warranty, Breach of Express Warranty, and Fraudulent Concealment and Misrepresentation. Doc. [30]. Defendant moves to dismiss all claims for failure to state a claim upon which relief can be granted. *See* Doc. [10]. The motion is fully briefed. *See* Docs. [11], [17], [18].

## LEGAL STANDARD

  Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

  Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. A plaintiff's allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys,*

*Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The well-pled facts must establish more than a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)).  But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Although courts must accept all well-pled factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted).

## DISCUSSION

Plaintiff's Counts I (breach of contract), III (negligence), and V (breach of express warranty) successfully state claims.  Counts II (negligent misrepresentation) and VI (fraudulent concealment and misrepresentation) fail to state claims upon which relief can be granted.  The Court declines to rule on the sufficiency of Count IV (breach of implied warranty) at this time.

### I. Count I:  Breach of Contract

For a breach of contract action, the claimant must allege and prove four elements: "(1) the existence and terms of a contract, (2) that plaintiff performed or tendered performance pursuant to the contract, (3) breach of the contract by the defendant, and (4) damages suffered by the plaintiff." *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 327 (Mo. App. 2017) (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (en banc)).

*Pace* Defendant, Plaintiff is not required to quote from the contract, attach the contract, or identify the exact portion, section, or page that entitles it to relief.  *See Montgomery v. Regions Bank, Inc.*, 2020 WL 4732049, at *5 (E.D. Mo. Aug. 14, 2020) ("[A]lthough Plaintiff does not attach the contracts to the Amended Complaint or point to the specific provisions in each contract, that is not necessarily required at this stage."); *Nelson v. Wallen*, 2014 WL 2739456, at *1 (E.D. Mo. June 17, 2014) ("[A] plaintiff need not attach the actual contract to the complaint

3

for the case to proceed. Instead, the plaintiff may choose, as they did here, to plead its legal effect." (internal citations omitted)). Here, Plaintiff has chosen to plead the legal effects of the contract, which is acceptable so long as each element is properly pled. Construing the Amended Complaint in the light most favorable to Plaintiff, Bamboo has sufficiently stated a claim for breach of contract.

Plaintiff properly alleges the existence and terms of the contract. The Amended Complaint states that the prior owner and Defendant entered into an agreement on or about March 2021 "for demolition, replacement and construction work for the Centimark Roof." Doc. [30] ¶ 9. Defendant agreed to serve as general contractor for the Centimark roof, and the prior owner agreed to pay the reasonable value of all labor and materials under the Contract. *Id*. ¶¶ 19-20. Because Plaintiff was not an original party to the contract, Defendant argues, Plaintiff "bears the heavier burden of also pleading the specifics of the assignment of the contractual rights held by the former building owner." Doc. [11] at 3. Under Missouri law, "[n]o particular form of words is necessary to accomplish an assignment, so long as there appears from the circumstances an intention on the one side to assign . . . and on the other side to receive." *Rabius v. Brandon*, 257 S.W.3d 641, 645 (Mo. Ct. App. 2008) (quoting *Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. 2002) (en banc)). Plaintiff's allegation that it became the successor in interest to the Contract when it purchased the Property from the prior owner on February 19, 2022, includes sufficient specifics to satisfy the pleading standard as to the assignment of contractual rights.

Plaintiff also properly alleges the second and third elements of its breach of contract claim: performance by Plaintiff and breach by Defendant. The Amended Complaint states that the prior owner paid Defendant in full under the Contract, Doc. [30] ¶ 22, but Defendant breached the Contract by failing to perform essential duties expressly set out or implied in the Contract, including: (a) "Failing to conduct the necessary inspections, testing and preparation of the structures necessary to support the roof"; (b) "Failing to disclose material, adverse conditions, which existed within the roof's substructure"; (c) "Applying an improper and unfit product to the Property"; (d) "Failing to address circumstances and conditions which existed on the roof components and support structures, prior to installing the Centimark Roof"; (e) "Providing improper design and substandard workmanship and defective materials on the Centimark Roof"; (f) "[F]ail[ing] to take reasonable and necessary precautions to prevent the failures of the Centimark Roof and supporting structures and fail[ing] to take reasonable and

4

necessary measures to prevent the Distress Issues"; and (g) "Failing and refusing to address the Distress Issues, failures and defects once they occurred and were brought to Defendant's attention." *Id.* ¶ 21. Finally, in satisfaction of the fourth element of a breach of contract claim, Plaintiff alleges that Defendant's breach caused Plaintiff damages in excess of $700,000, which includes repair costs, diminution of the fair market value of the Property, and other costs attributable to Defendant's breach. *Id.* ¶ 26. Plaintiff has thus successfully stated a claim for breach of contract.

## II.     Count II:  Negligent Misrepresentation

To plead a claim for negligent misrepresentation under Missouri law, Plaintiff must allege sufficient facts that, taken as true, demonstrate:

(1) the speaker supplied information in the course of his or her business;

(2) the information was false as a result of the speaker's failure to exercise reasonable care;

(3) the speaker intentionally provided the information for the guidance of limited persons in a particular business transaction;

(4) the hearer justifiably relied on the information; and

(5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

*Blevins v. Am. Fam. Mut. Ins. Co.*, 423 S.W.3d 837, 842 (Mo. Ct. App. 2014) (citing *Stein v. Novus Equities Co.*, 284 S.W.3d 597, 602-03 (Mo. Ct. App. 2009)).

According to the Amended Complaint, Defendant represented to the prior owner that it would serve as general contractor and "conduct all contracting in a good and workmanlike manner." Doc. [30] ¶ 30. In addition, Plaintiff alleges, "throughout the pre-construction, design, construction administration, warranty and repair/compliance phases of the Centimark Roof Project, Defendant represented that its design, specifications, construction and other work was performed in a workmanlike and proper manner in accordance with the contract documents and ensure [sic] proper, successful completion of the Centimark Roof in accordance with best practices and industry standards." *Id.* ¶ 31. The Amended Complaint then lists damages Plaintiff incurred as a result of Defendant's misrepresentations. *Id.* ¶ 34.

Defendant submits that Plaintiff fails to state a claim for negligent misrepresentation by failing to allege element (5), "that the *hearer* (the former building owner) suffered any damage." Doc. [11] at 4. Plaintiff responds in two ways: (1) by claiming that the prior owner assigned Plaintiff the right to bring a negligent misrepresentation claim, and (2) by pointing out that the

5

Amended Complaint alleges misrepresentations made to *both* Plaintiff and the prior owner. Doc. [17] at 8. Either way, Plaintiff has failed to state a negligent misrepresentation claim.

To make out a claim that the prior owner assigned Plaintiff its right to assert a negligent misrepresentation claim, Plaintiff would have to allege that the prior owner (i.e., the hearer) suffered damages in justifiable reliance on Defendant's misrepresentations. *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 136 (Mo. 2010) (en banc). The Amended Complaint alleges only damages suffered by Plaintiff, and Plaintiff's briefing cannot compensate for that missing element. *See, e.g.*, Doc. [17] at 9.

To make out its own negligent misrepresentation claim, Plaintiff must show that *Plaintiff* justifiably relied on Defendant's misrepresentations, whether they were made to the prior owner or to Plaintiff itself.[2] *See Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 845 (Mo. Ct. App. 2015) ("Because of the requirement of reliance, a claim of negligent misrepresentation will not be successful . . . where the plaintiff did not take any action or refrain from taking any action based on the representation." (internal citations omitted)). The Amended Complaint alleges only that the *prior owner* relied on Defendant's statements "in executing and performing in full under the Contract."[3] Doc. [30] ¶ 32. It contains no allegation that Plaintiff itself acted or refrained from acting in reliance on any representation by Defendant. *See Saffaf v. Ally Fin., Inc.*, 2021 WL 3089039, at *4 (E.D. Mo. July 22, 2021) (Plaintiffs failed to state a claim for negligent misrepresentation where they did "not allege that *they* relied on any of these alleged misrepresentations, took any action based on them, or refrained from taking any action based on them.").

---

[2] If Plaintiff's claim rested on representations made to the prior owner, Plaintiff would also have to show that Defendant knew a subsequent purchaser would rely on Defendant's representations, and that Defendant could foresee the harm to Plaintiff if the statements were inaccurate. *See Renaissance Leasing, LLC*, 322 S.W.3d at 135. Because Plaintiff has not alleged reliance, there is no need to consider those elements.

[3] Plaintiff's Complaint states, "[s]uch representations were made by Defendant with the intent that Plaintiff's *successor in interest* rely on such representation in executing and performing in full under the Contract." Doc. [30] ¶ 32 (emphasis added). The Court assumes Plaintiff meant to state, "Plaintiff's *predecessor in interest*," as that would be consistent with Plaintiff's allegation in Count II that "[f]or purposes of inducing Plaintiff's predecessor in interest to select Defendant for its roof replacement and permit it to commence work on the Property, Defendant encouraged Plaintiff Bamboo's predecessor in interest to execute the Contract." *Id.* ¶ 29.

Because, on either theory, Plaintiff has not alleged one of the elements necessary to recover on a negligent misrepresentation claim, that claim is dismissed.

### III.    Count III: Negligence

"In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury." *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018) (en banc). Here, Plaintiff alleges Defendant had a duty "to exercise reasonable and ordinary care to provide materials, construct, and supervise construction of the Centimark Roof in a workmanlike manner, in compliance with applicable industry standards and acceptable practices, building codes and other laws, and to obtain the required licensing, insurance, and permitting required by law prior to said actions." Doc. [30] ¶ 36. And Defendant allegedly breached this duty by failing to provide conforming construction work and materials and by performing work "in violation of applicable professional standards, codes, industry standards and accepted practices."[4] *Id.* ¶¶ 37-38.

Defendant first argues that Plaintiff was not a party to the contract, and "a defendant who has contracted with another owes no duty to a plaintiff who is not a party to that agreement, nor can a non-party sue for negligent performance of the contract." Doc. [11] at 6 (citing *Captiva*

---

[4] Plaintiff also casts its allegation in terms of professional negligence: "During the design and planning phase, and during and following the construction of the Centimark Roof, Defendant had a professional responsibility to properly design and correct deficiencies in the Work and ensure that [ ] the work met the requirements of the contract documents, applicable building codes, industry standards and acceptable practices." Doc. [30] ¶ 40. And "Defendant, despite knowledge of defects, failed to exercise the required professional degree of care and failed to correct those issues . . . includ[ing] during the commissioning and warranty phases of the Project, when Defendant concealed and/or failed to disclose the various material omissions and other problems affecting the Centimark Roof Project to Plaintiff Bamboo when it had a professional and contractual duty to do so." *Id.* ¶ 41.

Plaintiff does not cite—and the Court has not found—any cases in Missouri extending the common law duty that exists for professionals to general contractors. And at least one court has specifically stated, "Missouri courts do not apply the professional services exception to contractors such as IWR providing construction services." *All. Glazing Techs., Inc. v. Wheaton & Sprague Eng'g, Inc.*, 2020 WL 6798997, at *2 (E.D. Mo. Nov. 19, 2020); *see also Korte Constr. Co. v. Deaconess Manor Ass'n*, 927 S.W.2d 395, 404 (Mo. Ct. App. 1996) ("Indeed, there are no cases in Missouri imposing professional standards of care on construction contractors."). Applying a professional standard to general contractors would thus be an extension of Missouri's law, and "[i]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *Salier v. Walmart, Inc.*, 76 F.4th 796, 802 (8th Cir. 2023) (quoting *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 673 (8th Cir. 2009)). Thus, Plaintiff's negligence claim can be brought only under an ordinary negligence standard.

*Lake Invs., LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 626 (Mo. Ct. App. 2014)). But Plaintiff's allegation that it became the successor in interest to the Contract, Warranty, and other rights related to the Contract when it purchased the Property from the prior owner on February 19, 2022, Doc. [30] ¶ 11, includes sufficient facts, if true, to show Plaintiff was in privity with Defendant. *See Rabius*, 257 S.W.3d at 645 ("No particular form of words is necessary to accomplish an assignment, so long as there appears from the circumstances an intention on the one side to assign . . . and on the other side to receive." (quoting *Keisker*, 90 S.W.3d at 74)).

Defendant also argues the economic loss doctrine bars Plaintiff's recovery. Doc. [11] at 5. Under Missouri law, a Plaintiff cannot bring a negligence action "[w]here the only damage complained of is an economic loss resulting from defects in the item built pursuant to a contract." *Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor-Morley, Inc.*, 146 S.W.3d 411, 417 (Mo. Ct. App. 2004). "Economic loss includes the cost of repair and replacement of defective property which is the subject of the transaction as well as commercial loss for inadequate value and consequent loss of profits or use." *Westfield, LLC v. IPC, Inc.*, 2012 WL 1205794, at *2 (E.D. Mo. Apr. 11, 2012) (*citing Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 322 S.W.3d 184, 192 (Mo. Ct. App. 2010)). Plaintiffs can recover for pure economic damages where there is "personal injury, damage to property other than that sold or built, or destruction of the property sold or built due to some violent occurrence." *Captiva Lake*, 436 S.W.3d at 628. In *Westfield*, the plaintiff alleged "damage to [m]all property as a result of water intrusion in addition to damage to the parking garage structures themselves." 2012 WL 1205794 at *2. Because the plaintiff alleged "damage to property other than that sold (i.e., damage to property other than the parking garage structures), the economic loss doctrine [did] not apply." *Id*. Here, Plaintiff alleges that Defendant's breach caused damage to other components of the building that were not Defendant's work. Doc. [30] ¶ 44. Because Plaintiff alleges damages to property other than the roof, the economic loss doctrine does not bar Plaintiff's negligence claim.

**IV.     Count IV:  Breach of Implied Warranty**

"Construction contracts have been imbued by law with an implied duty to perform in a workmanlike manner (sometimes described as an implied duty to perform in such a way as to produce a result which is fit for a particular purpose.)." *Korte Constr.*, 927 S.W.2d at 405 (citing *Middleton v. Benne*, 849 S.W.2d 265, 267 (Mo. Ct. App. 1993)). And Plaintiff alleges in the

8

Amended Complaint that "Defendant impliedly warranted that all materials, equipment and labor furnished in conjunction therewith were reasonably fit for their intended purpose and that the Property had been constructed in a skillful and workmanlike manner; that the construction of the Property was completed in accordance with applicable industry standards; and that the construction of the Property was completed in accordance with the specifications and representations in the Contracts." Doc. [30] ¶ 48. But Plaintiff also alleges that "Defendant *expressly* warranted their work against all deficiencies and defects in materials and/or workmanship and agreed to satisfy same without cost to Plaintiff Bamboo." *Id*. ¶ 55 (emphasis added). If a "contract contains an express provision governing the degree of skill and competence with which the work will be performed, the law need not and does not impose an implied warranty that would be wholly redundant." *Korte Constr.*, 927 S.W.2d at 405 (citing *Middleton*, 849 S.W.2d at 267). Because Defendant has not argued that Plaintiff's implied warranty claim is redundant of its express warranty claim,[5] and neither party has provided the Court with a copy of the Contract or Warranty, the Court declines to rule at this time on whether Plaintiff's implied warranty claim should be dismissed on that basis.

### V.   Count V: Breach of Express Warranty

As noted above, Plaintiff alleges that, "in accordance with the specific provisions of the Contract, Defendant expressly warranted their work against all deficiencies and defects in materials and/or workmanship and agreed to satisfy same without cost to Plaintiff Bamboo." Doc. [30] ¶ 55. Plaintiff maintains it satisfied the terms and condition of the Warranty, but Defendant has refused to repair the warranty items. *Id*. ¶¶ 58-59.

Defendant again argues that Plaintiff cannot "recover under a contract which is not attached, identified, quoted or any particular portions referenced." Doc. [11] at 7. That argument fails for the reasons stated in Part I, above. Plaintiff has sufficiently alleged the existence and terms of express warranties made by Defendant as general contractor for the Centimark Roof. Doc. [30] ¶¶ 9-11, 21.

Defendant also objects to Plaintiff's "assumption" that the Warranty is transferable. Doc. [18] at 2. Had Plaintiff attached the Warranty, Defendant claims, "the court would be able to readily discern that it requires Defendant's approval for it to be transferred and that plaintiff has

---

[5] In their briefing, both parties reference cases addressing the implied warranty of habitability, which applies only to newly constructed houses. *See Korte Constr.*, 927 S.W.2d 395, 405 (Mo. Ct. App. 1996).

9

not even alleged that it obtained such approval." Doc. [18] at 6. At the motion to dismiss stage, the Court must accept all well-pled factual allegations as true. Plaintiff alleges that it became the successor in interest to the Warranty, as well as the Contract, when it purchased and acquired the Property. Doc. [30] ¶ 11. Accepting those allegations as true, Plaintiff has stated a breach of express warranty claim.

### VI. Count VI: Fraudulent Concealment and Misrepresentation

Finally, in the alternative, Plaintiff brings a fraudulent concealment and misrepresentation claim. To prevail on a fraudulent misrepresentation claim, Plaintiff must show:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC*, 322 S.W.3d at 131-32. And to prevail on a fraudulent concealment claim, "Plaintiff must establish silence or concealment of facts that amounted to actual fraud and 'a legal duty to disclose on the part of the fraud-feasor arising from a relation of trust, from confidence, inequality of condition, or superior knowledge which is not within the fair and reasonable reach of the other party.'" *Mash v. Brown & Williamson Tobacco Corp.*, 2004 WL 3316246, at *11 (E.D. Mo. Aug. 26, 2004) (quoting *VanBooven v. Smull*, 938 S.W.2d 324, 328 (Mo. Ct. App. 1997)). "A plaintiff seeking to recover for fraudulent concealment must show all of the following: (1) the fact was not within the fair and reasonable reach of the plaintiff; (2) the plaintiff was unable to discover the concealed information; and (3) plaintiff exercised reasonable diligence." *Littlefield v. Edmonds*, 172 S.W.3d 903, 907 (Mo. Ct. App. 2005) (citing *Keefhaver v. Kimbrell*, 58 S.W.3d 54, 60 (Mo. Ct. App. 2001)).

Fraud claims must also meet the heightened standard of Rule 9(b), which requires Plaintiff to "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b); *see Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (requiring plaintiff's complaint alleging fraudulent misrepresentation to meet the heightened pleading standards of Rule 9(b)); *Collins v. Metro. Life Ins. Co.*, 117 F.4th 1010, 1017 (8th Cir. 2024) (requiring plaintiff's complaint alleging fraudulent concealment to meet the heightened pleading standards of Rule 9(b)). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as

well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). In essence, "the complaint must identify the who, what, where, when, and how of the alleged fraud." *Id*. (quotation marks and citation omitted).

> According to Plaintiff:
>
>> During the Contract negotiations, throughout the construction of the Centimark Roof, and post-construction, Defendant affirmatively misrepresented and/or concealed the following:
>>
>>> a. Defendant concealed the existence of extensive moisture, water and other damage to the roofing areas;
>>>
>>> b. Defendant concealed that it had failed to properly inspect, test and otherwise prepare the roofing substructure and insulation for the Centimark Roof construction . . . .

Doc. [30] ¶ 62. And Plaintiff further alleges:

> Defendant intentionally made materially false representations to Plaintiff concerning defects in the Centimark Roof and affected areas, instead of informing Plaintiff of these defects, including without limitation the following:
>
>> a. Defendant concealed that it failed to perform substantial work which was needed in order to inspect, test and prepare the original roofing component.
>>
>> b. Defendants misrepresented that the Centimark Roof was constructed according to industry and code requirements, when in fact:
>>
>>> i. the Centimark Roof exhibited various code violations, violations of industry standards and acceptable practices, all of which Centimark left unaddressed;
>>>
>>> ii. Defendant knew that Centimark Roof and related components had not been properly designed, prepared and installed.
>>>
>>> iii. Numerous areas of the roofing membrane and parapet materials were not properly secured or anchored to the rooftop of the property as required.
>>
>> c. On various other occasions, Defendant represented that the work had been completed properly and knowingly failed to disclose that work remained that had never been performed as required.

*Id*. ¶ 68. Plaintiff's allegations fail to meet Rule 9(b)'s heightened standard. Plaintiff fails to identify *who* concealed information or made false statements. Plaintiff also fails to allege *where* the alleged concealments or false statements occurred. And while Plaintiff alleges generally that the acts occurred "[d]uring the Contract negotiations, throughout the construction of the

Centimark Roof, and post-construction," Plaintiff provides no specifics about the timing of any concealments or false statements. Plaintiff also fails to properly allege all the elements necessary for a fraudulent concealment claim or a fraudulent misrepresentation claim. For example, Plaintiff fails to allege anything to suggest that the concealed facts were not within the fair and reasonable reach of Plaintiff or that Plaintiff exercised reasonable diligence in discovering the concealed information. And for its fraudulent misrepresentation claim, most of Plaintiff's allegations are conclusory, "formulaic recitation" of the elements. *Twombly*, 550 U.S. at 570; *see, e.g.*, Doc. [30] ¶ 68 ("Plaintiff reasonably believed the statements made by Defendant and failed to discover the true nature and existence of those defects in justifiable reliance on the truth of those statements, causing damage to Plaintiff as a result."); *id*. ¶ 68 ("Defendant knew the above representations were false at the time there [sic] were made and knew full well work remained to be completed on the project."). Thus, Plaintiff fails to state a claim for fraudulent concealment or fraudulent misrepresentation.

## CONCLUSION

Plaintiff's Amended Complaint successfully states claims for breach of contract, negligence, and breach of express warranty. Plaintiff's claims for negligent misrepresentation and fraudulent concealment and misrepresentation are subject to dismissal. The Court declines to rule on the adequacy of Plaintiff's claim for breach of implied warranty in light of the insufficiency of the briefing on that issue.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, Doc. [10], is **GRANTED** in part and **DENIED** in part. Counts II and VI are dismissed.

Dated this 18th day of November, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE